UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CIVIL CASE NO.:

JULIA D. FRACHTMAN,

    Plaintiff,

v.

AT&T MOBILITY, LLC, and ENHANCED
RECOVERY COMPANY, LLC

    Defendants,
_____/

## COMPLAINT FOR DAMAGES
## JURY DEMAND

1. Plaintiff, JULIA D. FRACHTMAN ("Plaintiff" or "Mrs. Frachtman") by and through the undersigned counsel hereby brings this action against Defendant, ENHANCED RECOVERY COMPANY, LLC, and for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the

2. Plaintiff further alleges violations of the Florida Consumer Collection Practices Act, §§559.55 – 559.785 (the "FCCPA") against Defendant, AT&T MOBILITY, LLC.

3. This is an action for actual damages, statutory damages, as well as injunctive and equitable relief brought by Plaintiff, in her capacity as an individual consumer, for AT&T MOBILITY'S violations of the FCCPA.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

5. Supplemental jurisdiction exists for Plaintiff's FCCPA claims pursuant to 28 U.S.C. § 1367.

6. Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Broward County, Florida.

## PARTIES

7. Plaintiff, who, as more fully described herein, is allegedly obligated to pay a debt and is therefore a consumer within the meaning of 15 U.S.C. § 1692a(3).

8. Plaintiff is a "consumer" as defined by Florida Statute §559.55(8).

9. Defendant AT&T MOBILITY, LLC ("AT&T") is a Georgia corporation authorized to do business in the state of Florida and regularly conducts business in Florida by providing wireless telecommunications services to its subscribers.

10. Defendant ENHANCED RECOVERY COMPANY, LLC ("ERC") is a Florida Corporation with its principal place of business at 8014 Bayberry Rd, Jacksonville, FL 32256.

11. ERC uses instrumentalities of interstate commerce in a business the principal purpose of which is the collection of debts. Defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) and Florida Statute §559.55(7).

12. These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications used to contact consumers within the state of Florida.

13. At all times material hereto, ERC regularly collects or attempts to collect debts for other parties and is a "debt collector" as defined under 15 U.S.C. 1692a(6).

## APPLICABLE LAW

### The FDCPA

14. The FDCPA provides, in relevant part: A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (2) The false representation of -- (A) the character, amount, or legal status of any debt … 15 U.S.C. § 1692e.

15. A consumer has a right under the FDCPA to receive information from a debt collector that is not "false, deceptive, or misleading." *Pralle v. Cooling & Winter, LLC*, No. 2: 16-cv-865-FtM-99CM (M.D. Fla. May 2, 2017).

16. The FDCPA defines the term "consumer" as "any natural person obligated or <u>allegedly obligated</u> to pay any debt." 15 U.S.C. § 1692a(3) (emphasis added).

17. The FDCPA defines the term "debt" as "any obligation or <u>alleged obligation</u> of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5) (emphasis added).

18. The FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due <u>or asserted to be owed or due another</u>." 15 U.S.C. § 1692a(6) (emphasis added).

19. "The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute." *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (citing 15 U.S.C. § 1692k).

20. For the purposes of the claims brought in this action, the applicable standard under the FDCPA in the Eleventh Circuit is "the least sophisticated" consumer test. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985) (adopting the test enunciated in *Exposition Press Inc. v. FTC*, 295 F.2d 869 (2d Cir. 1961)).

21. The principles underlying the FDCPA must be implemented for "the public—that vast multitude which includes the ignorant, the unthinking and the credulous." *Jeter*, 760 F.2d at 1172-73 (internal citations omitted). The "fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." Id. at 1173 (internal citations omitted).

22. There is only one affirmative defense to liability for a violation of the FDCPA, the "bona fide error" defense. 15 U.S.C. §1692k(c).

23. To take advantage of this defense, the defendant must show by the preponderance of the evidence that its violation of the Act was not intentional, was a bona fide error, and occurred despite the maintenance of procedures reasonably adapted to avoid any such error. *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1352-53 (11th Cir. 2009).

**The FCCPA**

24. The FCCPA's goal is to "provide the consumer with the most protection possible." *See LeBlanc* at 1192 (citing Fla. Stat. § 559.552).

25. The FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debt. Fla. Stat. § 559.72. This language includes all unlawful attempts at collecting consumer debts by creditors and debt collectors alike. *See Williams v. Streeps Music Co.*, 333 So. 2d 65, 67 (Fla. 4th DCA 1976).

26. The FCCPA further provides that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

27. "The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." Fla. Stat. §559.77(2).

**The FCRA**

28. The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.,* was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

29. The FCRA provides that "[n]o person shall sell, transfer for consideration, **or place for collection a debt that such person has been notified under §1681c-2a** of this title has resulted from **identity theft**." *See* 15 U.S.C. §1681m(f)(1)[1] (emphasis added).

**FACTUAL ALLEGATIONS**

30. Mrs. Frachtman has been the victim of identity theft on at least two occasions.

---

[1] 15 U.S.C. §1681m(8)(A) does not allow for civil liability for either negligent or willful noncompliance of the entire section.

31. Unbeknownst to Mrs. Frachtman, AT&T registered a hard inquiry on Plaintiff's credit file with Equifax on May 13, 2019. *See infra* ¶ 49.

32. Mrs. Frachtman would not fully absorb the effects of that hard inquiry from AT&T until months later.

33. A hard inquiry is recorded on a consumer's credit file when a lender or company requests to review a consumer's credit report as part of a loan or credit application. *See* https://www.equifax.com/personal/education/credit/report/understanding-hard-inquiries-on-your-credit-report/ (last visited August 20, 2020).

34. During the next several months, Mrs. Frachtman would begin to unravel the relationship between that hard inquiry from AT&T and the fraudulent use of her identity.

35. The events surrounding one theft occurred around May 16, 2019, when an unauthorized person used Mrs. Frachtman's driver's license number to rent a car under the name Andre Lawrence. In June or July of 2019, Mrs. Frachtman received a phone call from a collection agency trying to collect on a debt from AT&T. Since she already had an account with AT&T that was active and being paid on time, she did not believe it was legitimate.

36. On or about July 13, 2019, Mrs. Frachtman was contacted by the Port Authority of NY & NJ Police Department ("Port Authority") to notify her of the fraudulent rental using her information.

37. As a result, Mrs. Frachtman embarked on a tedious, arduous, and time-consuming task of providing enough information to prove the rental was fraudulent.

38. On or about July 16, 2019, Mrs. Frachtman completed an Affidavit of Fraud and provided it to the rental company known as the Avis/Budget Group.

39. A true and correct copy of the Affidavit of Fraud is attached hereto as part of Composite Exhibit "A."

40. On August 20, 2019, Mrs. Frachtman received a letter from Credence Resource Management, LLC ("Credence Letter") claiming she owed $4,006.26 for an AT&T account. A true and correct copy of the Credence Letter is attached hereto as part of Composite Exhibit "A."

41. The Credence Letter chopped off half of Mrs. Frachtman's last name, included middle initials that do not belong to her, and otherwise made no sense because she already had services with AT&T for her cell phone. Before the Credence Letter, Plaintiff was contacted by phone several times by either Credence Resource Management, or another collection agency.

42. On or about October 1, 2019, Mrs. Frachtman received a letter at her home address from Sedgwick CMS on behalf of the Avis/Budget Group regarding the fraudulent rental ("Claims Letter"). A true and correct copy of the Claims Letter is attached hereto as part of Composite Exhibit "B."

43. The Claims Letter was addressed to Andre Lawrence, the person who used Mrs. Frachtman's driver's license number in the fraudulent rental.

44. Despite completing the Affidavit of Fraud and providing it to Avis/Budget, Mrs. Frachtman now had to reassert her claim of identity theft to protect herself from owing $11,451.43 as alleged in the Claims Letter.

45. On October 19, 2019, Mrs. Frachtman, through the undersigned, disputed the entirety of the charges based on identity theft. A true and correct copy of the written and faxed dispute is attached hereto as part of Composite Exhibit "B."

46. A few weeks later, Mrs. Frachtman contacted her local police department to fill out an identity theft police report. The Coral Springs police department has an online portal where consumers can complete a Report Incident and are later contacted after the incident is reviewed. *See* https://p2c.coralsprings.org/ReportIncident/IncidentEntryType.aspx (last visited August 24, 2020).

47. When Mrs. Frachtman was eventually contacted, she was directed to contact the Broward County Sheriff's Office ("Sheriff's Office") to get a police report.

48. Before contacting the Sheriff's Office, Mrs. Frachtman reviewed her consumer disclosures from Equifax, Experian, and Trans Union and saw the AT&T Mobility account reported as in collections.

49. Mrs. Frachtman found the following information regarding the fraudulent account on her November 25, 2019 disclosures:

   a. Hard Inquiry registered by AT&T Services, Inc. from May 13, 2019

   b. Experian – Credence Resource Mana reporting $4,006 as seriously past due and in collections; and

   c. Trans Union – 11 ATT Mobility reporting $4,006 as placed for collections.

50. Over the next several weeks, Plaintiff completed a police report and identity theft affidavit to submit to the three major credit reporting agencies ("CRAs") commonly known as Equifax, Experian, and Trans Union.

51. On or about May 4, 2020 Plaintiff sent written dispute letters to the CRAs to correct the reporting of AT&T and Credence Resource Management account ("Initial Disputes") and further requested that the account be blocked.

52. A true and correct copy of the Initial Disputes to the CRAs are attached hereto as Composite Exhibit "C."

53. The Initial Disputes specifically describe why the AT&T Account and the Credence Resource Management Account cannot possibly belong to Mrs. Frachtman. *See* Id.

54. Generally, Mrs. Frachtman explained the relation between the fraudulent car rental and the $4,006.26 being reported as in collections. Id.

55. Specifically, Mrs. Frachtman pointed to the obvious fact that her name was badly misspelled and since she already had cell phone service with AT&T, she does not need extra thousands of dollars in equipment and services. Id.

56. Based on information and belief, all information related to the AT&T account was removed from all three of Mrs. Frachtman's credit reports.

57. At this point, Mrs. Frachtman believed she would not have to worry about the AT&T account affecting her credit history, or having to deal with letters, phone calls, or any other attempts to collect.

58. Then, on July 14, 2020, Mrs. Frachtman received a letter from ERC on behalf of AT&T claiming that she owed $4,006.26 ("ERC Letter").

59. Once again, her last name was absurdly misspelled on the ERC Letter as it had been on the Credence Letter.

60. Yet again, Mrs. Frachtman, had to assert her claim of identity theft to a third party and did so by disputing the debt to ERC and requesting validation. A true and correct copy of the ERC Letter and corresponding validation request are attached hereto as Composite Exhibit "D".

61. On or about August 19, 2020, ERC responded to the validation request by attaching a bill from AT&T for the entire disputed amount of $4,006.26 and a blank identify theft affidavit. A true and correct copy of ERC's response to the validation request is attached hereto as Composite Exhibit "E".

62. Despite months of written correspondences, gathering documents, and filling out police reports, AT&T has completely ignored Mrs. Frachtman and instead placed this account for collections with ERC.

63. ERC failed to even investigate the correct spelling of Mrs. Frachtman's last name before robotically sending a letter to her demanding payment.

64. Mrs. Frachtman has invested hours of her time to protect her name, credit history, and be rid of any trace of this fraud. She has been contacted by as many as three collections agencies during this time: Credence Resource Management, ERC, and Sunrise Credit Services, Inc. At this time, it is unknown when Sunrise Credit Services, Inc., contacted Mrs. Frachtman, how many times she was contacted, and what the form of those contacts were. Additionally, Mrs. Frachtman has not retained any written letters that many have come from Sunrise Credit Services, Inc.

65. Rather than be continuously ignored, Mrs. Frachtman comes before the Court to have her past efforts validated and to hold Defendants accountable.

### COUNT I – VIOLATION OF §15 U.S.C. §1692e(2)(A) AGAINST ERC

66. Plaintiff incorporates paragraphs 1 through 66 as if fully set forth herein.

67. Plaintiff is not legally obligated to pay the debt at issue because she is a victim of identity theft.

68. Therefore, ERC violated §1692e(2)(A) of the FDCPA by misrepresenting the character, legal status, and amount of the debt.

69. Defendant's conduct is a violation of the FDCPA if it would be deceptive to the least-sophisticated consumer. *Id.*; *See also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (stating "[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.")

70. The FDCPA is a strict liability statute and accordingly Defendant's conduct need not have been intentional, Defendant's conduct violated the FDCPA regardless of its intentions. *See LeBlanc* at 1190.

71. Defendant, through its agents, representatives, and/or employees acting within the scope of their authority, violated 15 U.S.C. §1692e(2)(A).

72. 15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

73. As a result of Defendant's violations, Plaintiff suffered damages, including but not limited to, time spent addressing Defendant's illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in his favor and against Defendant for:

    a. Actual and statutory damages pursuant to 15 U.S.C. § 1692k;

    b. Attorneys' fees, litigation expenses and costs of the instant suit; and

    c. Such other or further relief as the Court deems proper.

## COUNT II – VIOLATION OF 15 U.S.C. §1692e(8) AGAINST ERC

74. Plaintiff incorporates by reference the allegations in paragraphs 1 through 66 as if fully stated herein.

75. A "debt collector" violates 15 U.S.C. §1692e(8) by "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

76. ERC violated §1692e(8) when it threatened to communicate false credit information to the CRAs by stating "[t]his serves as notice to you that ERC® has been authorized to report your delinquent account to the national credit bureaus when allowed by applicable law."

77. The FDCPA is a strict liability statute and accordingly Defendant's conduct need not have been intentional, Defendant's conduct violated the FDCPA regardless of its intentions. *See LeBlanc* at 1190.

78. ERC's conduct is a violation of the FDCPA if it would be deceptive to the least-sophisticated consumer. *Id.* at 1194 (stating "[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.")

79. The least-sophisticated consumer could have been deceived by ERC's Letter because it could improperly induce such a consumer to pay in order to keep the debt from being reported as a collection account to the "national credit bureaus."

80. ERC, through its agents, representatives, and/or employees acting within the scope of their authority, violated 15 U.S.C. §1692e(8).

81.   15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

82.   As a result of ERC's violations, Plaintiff has suffered damages including but not limited to, time spent addressing Defendant's illegal collection practices, misrepresentation of an amount to a third party, damage to her reputation for credit worthiness, an inaccurate credit report, and emotional distress.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in his favor and against ERC for:

   a.   Actual and statutory damages pursuant to 15 U.S.C. § 1692k;

   b.   Attorneys' fees, litigation expenses and costs of the instant suit; and

   c.   Such other or further relief as the Court deems proper.

## COUNT III - VIOLATION OF §559.72(5) AGAINST AT&T FOR DISCLOSURE(S) TO ERC

83.   Plaintiff incorporates by reference the allegations in paragraphs 2 - 6, 8, 9, and 24 – 65 as if fully stated herein.

84.   At all times relevant to this action, AT&T is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

85.   The FCCPA provides that no person shall "[d]isclose to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a

legitimate business need for the information or that the information is false." Fla. Stat. § 559.72(5).

86. AT&T knew or had reason to know that the information it disclosed to ERC regarding Plaintiff was false.

87. Plaintiff had previously put AT&T on notice about this false information in her Initial Disputes.

88. Additionally, The FCRA provides that "[n]o person shall sell, transfer for consideration, **or place for collection a debt that such person has been notified under §1681c-2a** of this title has resulted from **identity theft**." *See* 15 U.S.C. §1681m(f)(1) (emphasis added).

89. "Any person who fails to comply with any provision of s. 559.72 is liable for actual damages **and for additional statutory damages as the court may allow**, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with s.559.72, the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional." Fla. Stat. 559.77(2) (emphasis added).

90. As a result of AT&T's practices Plaintiff has suffered damages including but not limited to time spent addressing Defendant's illegal collection practices, misrepresentation of an amount to a third party, damage to her reputation for credit worthiness, an inaccurate credit report, and emotional distress.

WHEREFORE, Plaintiff respectfully requests this Court to enter:

a. Injunctive relief preventing AT&T from further violations of the FCCPA;

b. Actual, statutory, and punitive damages pursuant to Fla. Stat. § 559.77;

c. attorneys' fees, litigation expenses and costs of the instant suit; and

d. such other or further relief as the Court deems proper.

### COUNT IV – VIOLATION OF FLA. STAT., §559.72(9) AGAINST AT&T

91. Plaintiff incorporates by reference the allegations in paragraphs 2 – 6, 8, 9, and 24 - 65 as if fully set forth herein.

92. At all times relevant to this action, AT&T is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

93. AT&T violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when Defendant knew that the debt was not legitimate, or asserting the existence of some other legal right when Defendant knew that right did not exist.

94. FCRA provides that "[n]o person shall sell, transfer for consideration, **or place for collection a debt that such person has been notified under §1681c-2a** of this title has resulted from **identity theft**." *See* 15 U.S.C. §1681m(f)(1) (emphasis added).

95. Despite such a prohibition, AT&T placed the account for collection with ERC.

96. Subsequently, Plaintiff received communication from ERC on behalf of AT&T to collect $4,006.26 from Plaintiff.

97. "Communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium. Accordingly, AT&T indirectly

communicated with Plaintiff to collect a debt despite being prohibited from doing so under the FCRA.

98. "Any person who fails to comply with any provision of s. 559.72 is liable for actual damages **and for additional statutory damages as the court may allow**, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with s.559.72, the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional." Fla. Stat. 559.77(2) (emphasis added).

99. As a result of AT&T's practices Plaintiff has suffered damages including but not limited to time spent addressing Defendant's illegal collection practices, misrepresentation of an amount to a third party, damage to her reputation for credit worthiness, an inaccurate credit report, and emotional distress.

WHEREFORE, Plaintiff respectfully requests this Court to enter:

a. Injunctive relief preventing AT&T from further violations of the FCCPA;

b. Actual, statutory, and punitive damages pursuant to Fla. Stat. § 559.77;

c. attorneys' fees, litigation expenses and costs of the instant suit; and

d. such other or further relief as the Court deems proper.

## JURY DEMAND

100. Plaintiff demands a trial by jury on all issues so triable.

*Respectfully Submitted,*

SHARMIN & SHARMIN, P.A.
830 North Federal Highway
Lake Worth, FL 33460
Telephone: 561-655-3925
Fax: 561-202-9041
Direct: 954-667-3096

*/s/ Kevin Rajabalee*
Kevin Rajabalee, Esq.
FBN: 119948
Email: kevin@sharminlaw.com
Eiman Sharmin, Esq.
FBN: 716391
Email: eiman@sharminlaw.com
Attorneys for Plaintiff